IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES E. EDWARDS,<br><br>　　　　Petitioner,<br><br>　v.<br><br>Warden SISTO, CSP-Solano,<br><br>　　　　Respondent.　　　　　　／<br><br>DAVID E. EDWARDS,<br><br>　　　　Petitioner,<br><br>　v.<br><br>Warden SISTO, CSP-Solano,<br><br>　　　　Respondent.　　　　　　／ | Nos.　C 08-2841 WHA (PR)<br>　　　　C 08-2842 WHA (PR)<br><br>**ORDER DENYING PETITIONS FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

In this Ponzi scheme prosecution, petitioners James and David Edwards, father and son, were tried and convicted together in state court, and they have each filed a federal petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 challenging their convictions. The petitions raise the same claims. Respondent was ordered to show cause why the writ should not be granted based on the cognizable claims for relief set forth in the petitions. Respondent filed an answer to each petition, with supporting memoranda and exhibits, and petitioners each filed a traverse. Initially, only three claims were found cognizable in James Edwards's petition, but a

fourth claim was also found cognizable after reconsideration, and a supplemental answer and traverse have been filed as to that fourth claim. Four claims were found cognizable David Edwards's petition, and the answer and traverse address all four claims. For the reasons set forth below, the petitions are **DENIED**, and it is further explained why petitioners' proposed amended claims are not cognizable and the proposed amended petitions were not accepted for filing.

**STATEMENT**

Petitioners were charged with two others in Santa Clara County Superior Court in a corporate securities fraud conspiracy. Their two co-conspirators pled no contest or guilty prior to petitioners' trial. The jury convicted petitioners of one count of conspiracy, six counts of residential burglary, and 16 counts of securities fraud. *See* Cal. Pen. Code 182, 459; Cal. Corp. Code 25401. The jury also found true allegations that petitioners had committed multiple fraud felonies and that certain dollar amounts had been reached. *See* Cal. Pen. Code 186.11, 12022.6. The convictions were affirmed on direct appeal in a joint opinion by the California Court of Appeal (Resp. Exh. 5)[1]. The California Supreme court denied petitions for direct review, and petitions for a writ of habeas corpus (Resp. Exhs. 6-8). The following summary of the evidence is derived from the opinion of the California Court of Appeal. *See People v. Edwards*, 2007 WL 1991190 (Cal. Ct. App. July 11, 2007).

David Edwards and his father James Edwards ran a Ponzi scheme in which they sold fraudulent investments in their company, Resources Development International ("RDI"). Their co-conspirators, Michael Keller and William Whelan had pleaded no contest or guilty and testified to entering the homes of their clients to sell the investments in RDI. Various investors testified about investing in RDI between 1999 and 2003, receiving assurances that they would receive substantial returns on these investments, not being told that their investments would in fact be used to pay prior investors. Disappointed investors reported petitioners to the Santa Clara County District Attorney. An investigator testified to his discovery of petitioners'

---

[1] Unless otherwise noted, the exhibits cited herein are those filed in case number C 08-2841 WHA (PR).

2

fraudulent sales, and an official from the Federal Reserve Board and a forensic accountant also testified. Other witnesses testified pursuant to California Evidence Code Section 1101 concerning a fraudulent investment scheme in which petitioners had been involved just prior to the scheme involving RDI.

A more detailed general recitation of the facts is not necessary to resolve the claims remaining herein. Where necessary, additional facts relevant to specific claims are set forth below in the discussion of those claims.

## ANALYSIS

### A. STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 09 (2000), while the second prong applies to decisions based on factual determinations, *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003).

### B. ISSUES PRESENTED

Petitioners' remaining grounds for federal habeas relief are that: (1) the prosecution withheld exculpatory evidence; (2) their right to speedy trial was violated; (3) their equal protection rights were violated when they were selectively prosecuted because they were not Californians; and (4) their due process rights were violated when their case was tried by a biased judge.

#### 1. **Withholding of Exculpatory Evidence**

Petitioners claim that the prosecution withheld exculpatory evidence in violation of their right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the Supreme

3

Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Indeed, "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Stickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioners argue that the prosecution failed to disclose a "contract" between their company, RDI, and a company named Hamco Trading Group, Ltd., located in San Jose, California (Pet. Exh. 9). According to petitioners, the contract was obtained by a prosecution witness, Lawrence Warfield, but not turned over to them during trial. Warfield is an accountant who was appointed by the federal court as the receiver for RDI, and he seized the documents from petitioners' offices pursuant to an order from the federal court. Warfield testified at petitioners' trial that petitioners were running a Ponzi scheme and that RDI and their other businesses were not legitimate. Petitioners state that they did not receive the purported "contract" between RDI and Hamco until after the close of evidence, when Warfield used it in a deposition of an RDI employee for the federal court proceedings. Petitioners appear to believe that this "contract" could have contradicted Warfield's testimony by demonstrating that RDI had assets and income, and that the prosecution should have turned the contract over to them.

Petitioners have not established any probability that the purported contract would have been helpful, let alone that it met *Brady*'s standard for materiality. The alleged "contract" in fact consists of an unsigned agreement between RDI and Hamco describing investments from Hamco that RDI would handle and a letter from David Edwards to a representative of Hamco (Pet Exh. 9). There is no evidence that the agreement was ever signed by the parties, and as a result it does not establish that Hamco and RDI ever had a contract or that Hamco in fact made any investments with RDI.

4

1	Moreover, even if the contract had been executed, it does not undermine Warfield's
2	testimony that RDI was a Ponzi scheme. In such a scheme, RDI received investments and used
3	them to pay earlier investors. Many Ponzi schemes have some legitimate contracts and
4	arrangements so as to lend an appearance of legitimacy to a corrupt enterprise. Indeed, the
5	defense presented witnesses who testified that they made money investing in petitioners'
6	businesses. Thus, even if the purported contract were real, it would only be cumulative of the
7	other evidence that showed that parties had invested in RDI, and it would not mean that
8	petitioners had not run a Ponzi scheme. As a result, petitioners have not shown that there is a
9	reasonable probability that the purported contract was material or that it would have made a
10	difference in the outcome of the case had it been disclosed to petitioners sooner.
11	In addition, petitioners have not established that the prosecution failed to disclose the
12	evidence. Warfield, the receiver appointed by federal court, may have had the documents
13	during trial, but there is no evidence that the Santa Clara County District Attorney had them or
14	even knew about any purported contract with Hamco. It is further noted that petitioners
15	presumably knew how their business worked, knew about the "contract" and could have
16	subpoenaed it themselves from Hamco. To blame the prosecution for failing to produce
17	documents they knew about and could have obtained goes beyond the pale.
18	For the foregoing reasons, petitioners have failed to establish that their right to due
19	process was violated under *Brady*, and they are not entitled to habeas relief on this claim.
20	**2.     Speedy Trial**
21	Petitioners claim that the sixteen-month delay between their indictment in June 2003
22	and the beginning of their trial in October 2004 violated their constitutional right to a speedy
23	trial. When the indictment was filed, petitioners were in custody in Texas on a contempt
24	finding in the federal securities action against their companies brought by the Securities and
25	Exchange Commission. The Santa Clara County District Attorney had applied for extradition
26	of petitioners from Texas to California on November 1, 2002, the Governor of California issued
27	the warrant for extradition on November 13, 2002, and the Governor of Texas issued the
28	extradition warrant a week later. The extradition was delayed over the next year and a half,

5

however, while petitioners' pursued unsuccessful petitions for habeas corpus and other forms of relief in all three levels of the Texas courts and the United States District Court in Texas. The last of these petitions was not denied until March 26, 2004. Petitioners were then extradited to California, and they made their first appearance in Santa Clara County Superior Court in this case on May 19, 2004.

Once they appeared in the superior court, petitioners initially refused to enter a plea, requiring the trial court to enter it for them; on multiple occasions requested additional time to locate their own counsel, which they did not do; and they refused to either accept appointed counsel, represent themselves, or waive time (Resp. Exh. 1, Vols. 8-9, at 1905-10, 1914-16, 1920-24, 1928-35). A superceding indictment was filed on June 1, 2004, and on July 2, 2004, petitioners finally waived counsel and agreed to extend the trial date beyond statutory limit of sixty days because they needed time to file motions and prepare for trial (Resp. Exh. 9, Vol. 1, at 20-28, 33-38). Petitioners also requested that the California Supreme Court stay their proceedings, which request was denied. Trial began on October 5, 2004.

No per se rule has been devised to determine whether the right to a speedy trial has been violated, instead, courts must apply a flexible "functional analysis," *Barker v. Wingo*, 407 U.S. 514, 522 (1972), and consider and weigh the following factors in evaluating a Sixth Amendment speedy trial claim: (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Doggett v. United States*, 505 U.S. 647, 651 (1992). Of these factors, the "focal inquiry" is the reason for the delay, including whether it was the state or the defendant responsible for the delay. *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007).

Here, it is clear that California was not responsible for most if not all of the delay between the indictment and trial. Petitioners were in custody in Texas when the indictment was filed in June 2003, and California had already issued a warrant for their extradition eight months earlier. Extradition was delayed for over nine more months after the indictment, not through any fault of California, but because petitioners' numerous petitions in the state and federal courts challenging extradition had to be decided before they could be brought to

California.

Once petitioners were extradited and finally appeared for the first time in California state court in the instant case, on May 19, 2004, only five more months passed before they were tried, which is not excessive in a case involving complex charges of conspiracy and fraud. *See id.* at 855-57 (noting that Ninth Circuit has found that a six-month delay constitutes a "borderline case," but a longer delay is tolerated when there are complex charges of conspiracy; fourteen-and-a-half month delay from arrest to trial weighs only slightly in defendant's favor); *cf. United States v. Gregory*, 322 F.3d 1157, 1163 (9th Cir. 2003) (22-month delay does not weigh heavily in defendant's favor because it was not excessively long). Moreover, the five-month delay was clearly in part, if not entirely, petitioners' their fault insofar as they initially refused to enter a plea; on multiple occasions requested additional time to locate their own counsel, which they did not do; refused to either accept appointed counsel, represent themselves, or waive time; ultimately allowed six weeks to pass before they waived counsel; and agreed to extend the trial date beyond statutory limit of sixty days because they wanted time to file motions and prepare for trial.

As the majority, if not the entirety, of the sixteen-month delay between the indictment and trial was attributable to petitioners' own actions, and not those of the State, they are required to show "actual prejudice" from the delay in order to establish a violation of their constitutional right to a speedy trial. *See United States v. Lam*, 251 F.3d 852, 859 (9th Cir.), *amended*, 262 F.3d 1033 (9th Cir. 2001) (if the defendants are responsible for the delay, they carry a "heavy burden" of demonstrating actual prejudice to succeed on a speedy trial claim). Actual prejudice can be shown via: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility that the accused's defense will be impaired. *United States v. Gregory*, 322 F.3d 1157, 1163 (9th Cir. 2003). Petitioners have not alleged, let alone established, any of the foregoing, nor does the record does not show that the they lost any exculpatory evidence or witnesses during the delay, or that it otherwise impaired their defense in any way. As petitioners have not met their "heavy burden" of showing that the delay caused them "actual prejudice," their speedy trial claim fails.

As petitioners are responsible for the delay between the indictment and the trial, and

7

they have not shown that it caused him actual prejudice, they are not entitled to federal habeas relief on their speedy trial claim.

### 3. Selective Prosecution

Petitioners claim that they were prosecuted because they were out-of-state residents, and that prosecuting them on this basis is unconstitutional. The decision whether to prosecute and what charges to bring generally rests entirely in the prosecutor's discretion, but the prosecutorial decision may not violate equal protection by resting on "'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Courts presume that prosecutors have properly discharged their official duties. *Ibid.* In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present "'clear evidence to the contrary.'" *Ibid.* (citation omitted). To establish a prima facie case of selective prosecution, the claimant must show that (1) similarly situated individuals were not prosecuted; and (2) the prosecution was motivated by a discriminatory purpose. *Id.* at 465.

Petitioners, who were Washington residents, have not shown that a similarly situated group of California residents were not prosecuted. In their petitions, they cite only a single instance in which a California company named Hapjack Marketing that also violated California Corporations Code Section 25401 was sued civilly but not prosecuted criminally. Petitioners have not shown that the fraud committed by Hapjack was similar in seriousness, in how widespread it was, in the number of victims, or that the strength of the case against Hapjack was as strong as the case against petitioners, however. In their traverse, petitioners cite five additional cases, but these were all cases in which the individuals and/or companies were in fact criminally charged, just like petitioners. As a result, petitioners have not satisfied the first prong of establishing a prima facie case of discriminatory prosecution.

Petitioners have also failed to advance any evidence of discriminatory purpose in the prosecutor's decision to prosecute them. To establish a discriminatory purpose, the claimant must show that the government undertook a particular course of action ""at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group."" *United States v. Turner*, 104 F.3d 1180, 1184 (9th Cir. 1997) (quoting *Wayte v. United States*, 470 U.S. 598, 610

(1985)). Petitioners do not point to any evidence that the prosecution based their decision to prosecute upon the fact that petitioners were not California residents. Indeed, the list of cases in petitioners' traverse in which California companies have been prosecuted suggests otherwise.

Petitioners also complain that they were discriminated against because they allegedly did not receive an administrative notice to cease and desist, pursuant to California Corporations Code Section 25533.5, prior to being prosecuted, whereas the California residents in the five cases cited in their traverse allegedly did receive such a notice. Even if true, this would establish at most discrimination in the decision whether to give such a notice, but not in the decision whether to prosecute. To the extent petitioners are complaining that they should have received such a notice, that is a matter of state law that cannot be the basis for federal habeas relief.

As petitioners have failed to establish either that others who are similarly situated to them were not prosecuted, or present any evidence that the prosecution acted with discriminatory purpose, they have not made out a prima facie case of discriminatory prosecution. Accordingly, petitioners are not entitled to habeas relief on this claim.

### 4. **Trial Court Bias**

Petitioners claim that their due process rights were violated because their trial judge was biased against them. The due process clause guarantees a criminal defendant the right to a fair and impartial judge. *In re Murchison*, 349 U.S. 133, 136 (1955). In some cases, the proceedings and surrounding circumstances may demonstrate actual bias or an appearance of advocacy on the part of the judge, i.e., improper conduct. *Taylor v. Hayes*, 418 U.S. 488, 501-04 (1974). A trial judge deprives the parties of a fair trial only when the record discloses actual bias, or leaves the reviewing court with an abiding impression that the judge projected to the jury an appearance of advocacy or partiality. *See United States v. Parker*, 241 F.3d 1114, 1119 (9th Cir. 2001).

Petitioners point to a variety of adverse rulings by the trial judge that they contend evince his actual bias. Judicial rulings alone almost never constitute a valid basis for establishing actual bias, however. *Liteky v. United States*, 510 U.S. 540, 555 (1994). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the

9

course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Ibid.* The adverse rulings cited by petitioners do not display favoritism or antagonism, but rather were correct applications of the law or, at the very least, based on the trial judge's opinions based upon the facts or events that arose in the course of trial.

First, petitioners cite the trial court's denial of their request for appointment of advisory counsel. Petitioners chose to represent themselves after having been offered, on numerous occasions, appointment of counsel to represent them. Petitioners had previously represented themselves in challenges to extradition from Texas that had lasted approximately eighteen months. In denying advisory counsel, the trial court showed no bias against them. The denial of advisory counsel does not in and of itself evince bias rather than a correct understanding that criminal defendants who represent themselves may be denied appointment of advisory counsel. *See McKasle v. Wiggins*, 465 U.S. 168, 176 (1984); *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994).

Petitioners next allege that the trial judge informed the jury that petitioners were not trained in the law, but there is no such statement in the record. Petitioners refer to the trial judge's statement during petitioner David Edwards's closing argument that the defendants who represent themselves may "have a difficult time distinguishing between testimony that's in evidence and making statements on their own when that evidence is not there" (Resp. Exh. 9, Vol. 18, at 2717-18). The trial court made this statement after sustaining multiple objections by the prosecutor that David Edwards was stating facts not in evidence during closing argument. Petitioners do not argue or show that these objections were invalid or that David Edwards was not, in fact, improperly referring to facts that had not been admitted as evidence. In this context, the trial judge's remarks were not disparaging of petitioners, let alone evidence of bias, but rather clarification for why the prosecutor's objections had to be sustained.

Petitioners also complain that the trial court overruled many more of their objections than the prosecutor's objections. They do not show that any of these rulings was incorrect, however, or that their objections were simply much less meritorious than those of the prosecutor. In addition, petitioners claim that the trial judge required them to articulate the

10

1  bases for their objections, but did not require the prosecutor to do so. The record indicates that
2  the prosecutor, like the petitioners, generally stated the basis for their objections, however, and
3  petitioners' objections were overruled because they lacked merit, not because they did not
4  articulate the basis for them. Consequently, there is no indication of antagonism or bias in the
5  trial court's handling of the parties' objections.

6  Petitioners also complain that in denying various motions, the trial court did not provide
7  findings of fact and conclusions of law, but this does not indicate bias because they cite no law
8  requiring the judge to do so.

9  Petitioners also complain that the trial court allowed witnesses Lawrence Warfield and
10 Herbert Biern to give expert testimony in the areas of financial analysis and forensic
11 accounting. They do not dispute Warfield's expertise, and indeed they did not object to his
12 designation as an expert at trial. Rather, they complain that Warfield had a "financial
13 incentive" to convict petitioners as evidenced by his being "award[ed]" 2.5 million dollars
14 based on their conviction. There is no evidence that Warfield received any award based on their
15 conviction. As part of their sentence, petitioners were ordered to pay $2.5 million dollars in
16 restitution to the receivership of their bankrupt company, RDI (Pet. Exh. 10). Warfield was the
17 receiver for RDI, but as such he would not personally receive the money, nor is there any
18 evidence that his fee for being the receiver was contingent on petitioners being convicted.
19 Petitioners complain that Biern was not qualified, but he had been designated an expert in
20 similar areas over forty times based on his position as an official with the Federal Reserve
21 Board and prior work supervising banks for the Federal Deposit Insurance Corporation. Under
22 these circumstances, allowing Warfield and Biern as experts was proper.

23 Petitioners complain that the trial court did not allow them to call a witness to testify
24 that they did not receive an administrative notice to cease and desist, pursuant to California
25 Corporations Code Section 25533.5, prior to being prosecuted. At trial, they wanted to present
26 this as a defense to their charges based on their contention that California law requires such a
27 notice prior to prosecution. The trial court ruled that the lack of notice could not be presented
28 as a defense to their charges, a ruling of state law not subject to review in a federal habeas
corpus proceeding. *See Hicks v. Feiock*, 485 U.S. 624, 629 (1988). Moreover, even if

11

1 petitioners could show that this ruling was incorrect, which they have not, there is no indication
2 in the record that such a ruling was based on animosity or bias as opposed to the trial judge's
3 good faith understanding of the applicable law and facts.

4 Lastly, petitioners complain that they had to present evidence prior to the end of the
5 prosecution's case-in-chief. Petitioners wanted to call as witnesses a number of prosecution
6 witnesses who had traveled long distances from out of state to come to court. In order to save
7 them from having to travel to court twice, the trial court invoked a state procedure allowing the
8 defense to call them as their own witness immediately after they finished testifying for the
9 prosecution. Petitioners availed themselves of this procedure without objection. The trial court
10 appears to have had the convenience of the witnesses in mind, and no bias can be inferred from
11 its ruling.

12 As the trial court's rulings cited by petitioners do not evince antagonism or favoritism,
13 their claim of judicial bias does not warrant federal habeas relief.

### C. AMENDED PETITION

15 Petitioners each submitted proposed amended petitions setting forth amended versions
16 of three of the eight claims that had been dismissed from the original petitions: claims one
17 (personal jurisdiction), two (subject matter jurisdiction), and five (Fourth Amendment). James
18 Edwards was denied leave to file the amended petition because even as amended these claims
19 still did not state a cognizable claim for relief. David Edwards' motion for leave to file the
20 amended petition was not ruled on. Below, it is further explained why the proposed amended
21 claims do not state valid grounds for federal habeas relief, and therefore why petitioners are not
22 given leave to file their proposed amended petitions.

#### 1. Claim One – Personal Jurisdiction

24 Petitioners argue that extending personal jurisdiction to them, although authorized by
25 California Penal Code 27(a), nonetheless violates due process because they never set foot in
26 California. Due process authorizes personal jurisdiction over defendants who have "minimum
27 contacts" with the forum state. *International Shoe Company v. Washington*, 326 U.S. 310, 316
28 (1945). Petitioners' fraud scheme entailed having their salespeople call California citizens, visit
them in their homes, defraud them of money, and send the money to petitioners' company (*see*

Pet. Ex. 1 at 2).

Exercising personal jurisdiction over non-resident actors based on their intentional wrongful actions aimed at residents of the forum state is presumptively reasonable and comports with due process. *See Calder v. Jones* 465 U.S. 783, 790 (1984). Indeed, fraudulent communications intended to lure California residents into detrimental contract arrangements has been held to be a constitutionally sound basis for exercising personal jurisdiction over the non-resident actors. *Dole Food Co. Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002). Thus, California's exercise of personal jurisdiction over petitioners' salespeople was constitutional based on the salespeople's intentional wrongful actions against California residents, namely their fraudulent communications with them.

As personal jurisdiction over petitioners' salespeople was constitutional, it was also permissible over petitioners themselves. Minimum contacts of a non-resident employer's agents or employees, including contracts negotiated with or torts committed against residents of the forum state, are imputed to the employer and subject the non-resident employer to local jurisdiction. *Ochoa v. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002). Thus, to whatever extent it was petitioners' salespeople, and not themselves, who called the California residents and defrauded them, these minimum contacts are imputed to petitioners and establish a constitutional basis for California to exercise personal jurisdiction over them.

Petitioners also argue in their proposed amended petitions that due process was violated because it was an "unforeseeable" expansion of state law to hold that they fell within the personal jurisdiction of the state courts under Section 27(a) of the California Penal Code. Even if the federal right to due process applied to such an argument, it was entirely foreseeable that Section 27(a) would apply to him. The statute says that personal jurisdiction extends to the perpetrator of "any crime" committed "in whole *or in part* within California." Cal. Pen. Code § 27(a) (emphasis added). Petitioners did not need to be physically present in California in order to commit a crime within California. Their Ponzi scheme involved salespeople calling victims in California and defrauding them of money. It is entirely foreseeable that this constituted committing a crime, at least in part, in California.

Consequently, petitioners' amendment to their claim of personal jurisdiction would have

1  been futile because the claim, as they proposed to amend it, continued to fail to state a valid
2  basis for federal habeas relief.

### 2. Claim Two – Subject-Matter Jurisdiction

In their second claim petitioners contend that due process was violated because the Santa Clara Superior Court lacked subject-matter jurisdiction over the charges against them. They argue that the California Department of Corporations must first issue a "desist and refrain" order before a violation of Section 25401 of the California Corporations Code can be criminally prosecuted, and that no such order was issued (Pet., attachment at 6-11). The California courts disagreed with them, the superior court saying that it had subject matter jurisdiction under California law (Pet., Exh. 1 at 3). The state courts' rulings on matters of state law are binding on a federal court, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and for that reason this claim was dismissed.

In their proposed amended petitions, petitioners claim that the right to a "desist and refrain" order is a state-created liberty interest protected by due process. They cite no Supreme Court precedent so holding, however, nor does there appear to be any such precedent. In the absence of "clearly-established Supreme Court authority," federal habeas relief cannot be granted on this claim. *See* 28 U.S.C. § 2254(d). Consequently, even as amended, this claim fails to state a viable claim for relief.

### 3. Claim Five – Fourth Amendment

In their fifth claim, petitioners contend that their Fourth Amendment right to a warrant for a search and seizure was violated. They recognize that *Stone v. Powell*, 428 U.S. 465, 481-82, 494 (1976), bars federal habeas review of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims, but contend that they were not afforded a full and fair opportunity because they were not allowed to make a rebuttal argument on their motion to suppress and because they have since discovered "other legal arguments" in support of the suppression motion. Because neither of these contentions are sufficient to avoid the rule of *Stone v. Powell*, *see Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986) (all *Stone v. Powell* requires is the initial opportunity for a fair hearing), the claims were dismissed.

In their proposed amended version of this claim, petitioners add that they were not given

14

a full and fair opportunity to present this claim on appeal because their appellate lawyer declined to raise this issue on appeal. Their appellate lawyer's choice not to raise the claim on appeal does not mean that California deprived them of the opportunity to do so. Indeed, their argument recognizes that their appellate lawyer could have raised such a claim on appeal under California law. The existence of a state procedure allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's actual use of those procedures, bars federal habeas consideration of those claims. *See Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990) (whether or not defendant litigated 4th Amendment claim in state court is irrelevant if he had opportunity to do so under California law). As their appellate lawyer had the opportunity to raise the Fourth Amendment claim on appeal under California law, the claim, even as amended, is still barred from federal habeas review.

## CONCLUSION

For the foregoing reasons, the petitions for a writ of habeas corpus are **DENIED**. The motions to file proposed amended petitions are also **DENIED.**

A certificate of appealability will not issue as to either of the petitions. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioners may seek a certificate of appealability from the United States Court of Appeals.

The clerk shall enter judgments in favor of respondents, and shall close the files.

**IT IS SO ORDERED.**

Dated: April 27, 2011

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.08\EDWARDS2841.RUL.wpd

15